UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILFREDO S.,[1]

                                        Plaintiff              DECISION and ORDER

-vs-
                                                              1:24-CV-00259-CJS
COMMISSIONER OF SOCIAL
SECURITY,

                                        Defendant.
_____

INTRODUCTION

        This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

which denied the application of Plaintiff for Supplemental Security Income ("SSI")

benefits.    Plaintiff maintains that such determination must be reversed since the decision

of the Administrative Law Judge ("ALJ") is unsupported by substantial evidence, as more

specifically set forth below.    Now before the Court is Plaintiff's motion for judgment on

the pleadings (ECF No. 6) and Defendant's cross-motion for the same relief (ECF No.

12).    For reasons discussed below, Plaintiff's application is denied, Defendant's

application is granted, and the matter is dismissed.

_____

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective
immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in
the United States District Court for the Western District of New York, any non-government party will be
identified and referenced solely by first name and last initial."

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id.* If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986)

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court in such an action is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d

---

("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review— even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec*., No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude*

*otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'— that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).   "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).   "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

When considering whether a particular finding or decision is supported by substantial evidence, a court may not rely on any *post hoc* rationalizations offered by the

Commissioner, but it may consider evidence that was evidently considered by the ALJ even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id*. *See also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ...."))."; *see also, Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action, which is set forth in the parties' papers. The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

Plaintiff received SSI benefits as a child, due to a congenital heart condition, pulmonary atresia,[6] for which he had several surgeries. However, upon attaining the age of 18, the Commissioner determined, initially and upon reconsideration, that he was no longer disabled.

In connection with this determination, the Commissioner had Plaintiff undergo an internal medicine examination by Nikita Dave, M.D. ("Dave"), at which time Plaintiff's chief complaint was "congenital heart disease." Tr. 813. Plaintiff reportedly told Dave about his heart surgeries, but indicated that he was presently asymptomatic for cardiac problems and in general good health. *Id*. The results of Dave's physical examination were normal, except that one of Plaintiff's legs was ¾" longer than the other, and he had flat feet bilaterally. Tr. 815-816.[7] Dave's medical source statement was as follows:

> The claimant states he remains under cardiac restrictions lifelong; therefore, avoid heavy lifting, carrying, and activities requiring greater than light to moderate sustained physical exertion through the day. However, for further details, and since the claimant appears to have a learning disability,[8] restrictions are deferred to Dr. Orie.

---

[6] This is a condition in which the heart valve, which controls the flow of blood to the lungs, does not form properly.

[7] Dave observed that Plaintiff had a "slightly abnormal gait," which is consistent with Plaintiff having twisted his ankle a month earlier, in October 2020. Tr. 27, 966-967.

[8] Contrary to Dr. Dave's impression on this point, a consultative psychiatric evaluation found that Plaintiff had no cognitive impairments. Tr. 823.

Tr. 816.

In this regard, Dave was referring to Joseph Orie, M.D. ("Orie"), Plaintiff's treating pediatric cardiologist.   Interestingly, though, Dr. Orie indicated that he put no physical restrictions on Plaintiff due to his cardiac problems.   More specifically, Orie indicated that Plaintiff had achieved "excellent results" from his most-recent surgery in 2012, was "hemodynamically stable," and had no particular restrictions, stating: "We have placed no formal restrictions on his current activity or exercise.   We feel that Wilfredo will most likely limit himself." Tr. 747.   As for limits that Plaintiff placed on himself, Plaintiff told Dave that there were just two: "no heavy lifting" and "always stay calm." Tr. 813.

Agency review physicians subsequently opined that Plaintiff would be limited to lifting and carrying 10 pounds frequently, and 20 pounds occasionally, sitting for six hours, and standing and/or walking for six hours in an eight-hour workday, but that he had no other physical limitations. Tr. 28.

Plaintiff requested a hearing before an ALJ, which was held on December 23, 2022.   Plaintiff appeared at the hearing with an attorney, and both Plaintiff and a vocational expert ("VE") testified. Tr. 22.

On March 30, 2023, the ALJ issued a Decision finding that Plaintiff was not disabled at any time during the period of alleged disability (the period between the date he turned 18, February 12, 2021, and the date of the ALJ's decision). Tr. 22-31.   The ALJ found, in pertinent part, regarding the second and third steps of the sequential evaluation,[9] that Plaintiff had severe impairments consisting of "pulmonary atresia with

---

[9]  Due to the nature of Plaintiff's claim, the ALJ did not need to consider the first step of the sequential

intact ventricular septum, status post multiple surgical procedures; obesity; left lower extremity length discrepancy with left ankle eversion; bilateral pes platus [(flat feet)]";[10] and that such impairments, either singly or in combination, did not meet or medically equal a listed impairment. Tr. 24-26.   Regarding his step three determination, the ALJ noted that Plaintiff's cardiac condition was asymptomatic, and that the problems with his left leg "did not result in an inability to ambulate without use of an assistive device." Tr. 25.

Prior to reaching step four of the sequential evaluation, the ALJ found that Plaintiff had the following RFC:

> [S]ince February 12, 2021, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he can performing [sic] pushing and pulling motions with the upper and lower extremities within the weight restrictions of 10 pounds frequently and 20 pounds occasionally; he can occasionally climb ramps or stairs, stoop, kneel, crouch or crawl.

Tr. 26.   In explaining this finding, the ALJ observed that Plaintiff's cardiac condition was, according to Dr. Orie, stable and asymptomatic, and that Plaintiff was "doing well from a cardiovascular standpoint and require[d] no intervention." Tr. 27.   The ALJ further noted that, according to Dr. Dave, Plaintiff's left leg abnormality resulted in only a slightly-abnormal gait, and that to the extent Plaintiff had reported pain in his left ankle, due to twisting it,[11] it had improved significantly (90% improvement) with physical therapy. Tr. 27 ("The claimant reported no ankle pain and walking long distances has gotten easier.

---

[10]  The ALJ noted that Plaintiff also claimed to be disabled due to a learning disability and depression over the death of his grandfather, but that these were not medically determinable impairments since the record contained no diagnosis regarding them from an acceptable medical source.

[11]  See the discussion below.

evaluation. *See*, Tr. 23 ("[T]his step is not used for redetermining disability at age 18 (20 CFR 416.987(b)).").

Lifting items and work activities have also become more tolerable.").   The ALJ further noted that at Plaintiff's most-recent physical with his treating physician, "the claimant had no complaints and he demonstrated normal gait and no observed clinical musculoskeletal or neurologic abnormality," and that at subsequent appointments, providers had reported that Plaintiff had a "smooth and steady gait." Tr. 27.

The ALJ, though, credited Plaintiff's subjective complaints and included limitations into the RFC finding that were more beneficial to Plaintiff's claim than what were included in the medical opinions.   For example, even though the ALJ found that the opinions of Dave and the agency review physicians were "generally persuasive," he included additional postural limitations related to Plaintiff's ankle and foot impairments.

More significantly, the ALJ found that Plaintiff was more limited than indicated by his own treating cardiologist, Dr. Orie.   In particular, the ALJ found that Plaintiff's "cardiovascular history clearly would impose more than minimal limitation on [Plaintiff's] exertional capacity," which is why the ALJ limited him to light work, even though, as the ALJ noted, Plaintiff admittedly had been working (at the level of substantial gainful activity ("SGA")) at a fast food restaurant at the medium exertional level without any difficulty. Tr. 28.

The ALJ noted, however, that even Plaintiff's own statements about his abilities were consistent with the ability to work at the light exertional level. Tr. 28.   The ALJ concluded his explanation of his RFC finding by stating:

> In sum, I find that the claimant's overarching allegation that he continues to be disabled as an adult is not persuasive. While he has a history of cardiovascular impairments, the record shows that these have been

10

asymptomatic since his most recent surgery in April 2012. The reports from Dr. Orie consistently indicate that the claimant is stable, he requires no change in medication, and he has no formal restrictions on his activities. While the claimant has had some instances of shortness of breath during the period at issue, these have been attributed to acute illness, rather than his cardiovascular impairments. The claimant has also been able to work at SGA levels despite his impairments during the period at issue. Primary care and cardiology records do not indicate a specific medical reason regarding a reduction of hours or cessation of work (Ex. 33F at 4; 34F at 27). A therapy report from June 2022 states that the claimant "has been feeling stressed due to not having a job and SSI case still pending," but does not further address the reason why he stopped working (Ex. 32F at 47). Regarding the claimant's ankle and foot impairments, the record shows no specific treatment for his pes planus, and only one month, from March to April 2021, when he received physical therapy for tibial tendinitis, which improved with treatment. The claimant's testimony at the hearing level regarding his physical limitations, which primarily involve running, lifting over 30 pounds, or engaging in strenuous activity that will raise his heart rate, is also inconsistent with his allegation that he continues to be disabled due to his impairments.

Based on the foregoing, I find the claimant's cardiovascular impairments restrict him to a range of light exertion work, and that his obesity, left ankle impairments, and bilateral pes planus restrict him to occasionally climbing ramps or stairs, stooping, kneeling, crouching, or crawling.

Tr. 29.

The ALJ then found at the fourth and fifth steps of the sequential evaluation, respectively, that with the aforementioned RFC, Plaintiff could not perform his past relevant as a fast-food cook, but that he could perform other work, and was therefore not disabled. Tr. 30-31. Plaintiff appealed, but the Appeal Council declined to review the ALJ's decision, thereby making the ALJ's decision the Commissioner's final decision. Tr. 1.

In this action Plaintiff contends that the ALJ erred when making his RFC finding, by "fail[ing] to explain the function-by-function limitations in support of the RFC." ECF No. 6-1 at p. 8.   More specifically, Plaintiff states:

> Here, the ALJ found Plaintiff could perform a reduced range of light work, with additional findings that Plaintiff could occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. Tr. 26. Despite making this conclusion, the ALJ failed to perform the required function-by-function assessment. The ALJ made conclusions on what Plaintiff could do, but the decision does not discuss how, which shows it was made in error.
>
> In the decision, the ALJ discussed Plaintiff's cardiology treatment, and noted that Dr. Orie noted Plaintiff was doing well but indicated Plaintiff would limit himself. Tr. 26-27. The ALJ noted Plaintiff was doing well from a cardiovascular standpoint and did not require intervention. Tr. 27. The ALJ noted Plaintiff had physical therapy for his ankle and was discharged after improving as well. Tr. 27. Despite this, there is simply no explanation by the ALJ to assess these specific areas of functioning.
>
> Moreover, had the ALJ considered them, he would have found greater limitations. First, for standing, evidence demonstrated limitation. For example, at primary care in October 2020, he was noted to have ankle pain with difficulty standing after sitting. Tr. 966.   Next, walking is relevant as well.   In May 2022, at primary care he was noted to have shortness of breath on exertion. Tr. 949. The ALJ failed to explain these necessary findings to support his RFC.
>
> Moreover, it has been held that the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review." *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir.2002)). Where the ALJ fails to do so, this remand is warranted if it "[f]rustrat[es] th[e] Court's efforts to "assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review[.]" *Almanzar v. Comm'r of Soc. Sec.*, No. 19-CV-00218-LJV, 2020 WL 4474092, at *3 (W.D.N.Y. Aug. 4, 2020) (quoting *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016)). Here, the decision does not attempt to make a function-by-function assessment of the

<u>claimant's ability to perform these and other abilities. Thus, the decision was not supported by substantial evidence</u>.

Next, this was also a harmful error, because the ALJ's analysis directly affected the RFC. The ALJ then provided an identical hypothetical to the vocational expert, and the ALJ relied on the vocational expert's testimony to find Plaintiff not disabled at step five. Tr. 65-67. This error resulted directly in the finding that Plaintiff was disabled, and remand is warranted.

ECF No. 6-1 at pp. 9-10 (underlining added, case citation omitted).

The Commissioner responds that his final decision is free of legal error and supported by substantial evidence, including "the relatively unremarkable clinical examination findings" and the "medical opinions of record," which were consistent with light work. ECF No. 12-1.  The Commissioner maintains that the ALJ adequately discussed such evidence, along with evidence of

Plaintiff's reported activities during the relevant period, including his hearing testimony that he ran for exercise, was able to lift 30 pounds, and was working at the Boys & Girls Club's after-school program. Tr. 28; see Tr. 51-52, 53.  At the afterschool program, Plaintiff participated in gym activities with children including soccer, football basketball, kickball, and volleyball but had to rest when he felt tired or out of breath. Tr. 28; *see* Tr. 52, 56, 63. Plaintiff also testified that he was able to walk three miles, and had no specific limitation for sitting, standing, or walking at a normal pace. Tr. 29; see Tr. 54. Plaintiff additionally testified that he cared for his personal needs and handled household chores, including vacuuming, sweeping, mopping, and doing dishes and laundry. Tr. 54-55.

ECF No. 12-1 at p. 10.   The Commissioner maintains, "in sum," that,

the ALJ thoroughly evaluated the medical opinion [evidence] and other evidence in considering Plaintiff's physical limitations, and substantial evidence, including the assessments of Dr. Dave and Dr. Miller, as well as Plaintiff's treatment history, examination findings, supported the ALJ's finding that Plaintiff could perform a range of light work, subject to postural

limitations.

ECF No. 12-1 at p. 12.   The Commissioner contends, on the other hand, that Plaintiff "is unable to meet his burden of showing that he was more limited than found by the ALJ," ECF No. 12-1 at p. 2, and that Plaintiff's argument really amounts to a disagreement with how the ALJ weighed the evidence.

Having carefully considered the parties' submissions and the relevant portions of the record, the Court finds that Plaintiff's arguments lack merit.   In this regard, Plaintiff, citing, in part, the Second Circuit's decision in *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("*Cichocki*") and SSR 96-8p, contends that the ALJ failed to "make a function by function assessment of [Plaintiff's] ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, [and] crouch," and that his RFC finding is therefore necessarily unsupported by substantial evidence. ECF No. 6-1 at p. 8; *see also, id*. at 10 ("Here, the decision does not attempt to make a function-by-function assessment of the claimant's ability to perform these and other abilities. [sic] Thus, the decision was not supported by substantial evidence.").

Plaintiff is referring to 20 C.F.R. § 416.945(b), "Your residual functional capacity," which states in pertinent part:

> Physical abilities. When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 416.945 (Westlaw 2025).   Plaintiff is also referencing SSR 96-8p, "Policy

Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial

Claims, which states in pertinent part:

> The RFC assessment must first identify the individual's functional limitations
> or restrictions and assess his or her work-related abilities on a function-by-
> function basis, including the functions in paragraphs (b), (c), and (d) of 20
> CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms
> of the exertional levels of work, sedentary, light, medium, heavy, and very
> heavy.

Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P

(S.S.A. July 2, 1996).   According to SSR 96-8p,

> a failure to first make a function-by-function assessment of the individual's
> limitations or restrictions could result in the adjudicator overlooking some of
> an individual's limitations or restrictions. This could lead to an incorrect use
> of an exertional category to find that the individual is able to do past relevant
> work as it is generally performed and an erroneous finding that the individual
> is not disabled.

*Id*. at *4.

However, in *Cichocki*, the Second Circuit rejected the argument made here by

Plaintiff, namely, that an ALJ's failure to make a "function by function assessment of

[Plaintiff's] ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, [and]

crouch" is a *per se* violation requiring remand.    More specifically, the *Chichoki* decision

stated, in pertinent part:

> We have said more generally (and now repeat) that where we are "unable
> to fathom the ALJ's rationale in relation to evidence in the record, especially
> where credibility determinations and inference drawing is required of the
> ALJ," we will not "hesitate to remand for further findings or a clearer

explanation for the decision." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). The automatic remand rule urged by Cichocki, however, goes far beyond this sensible practice. As already noted, the functions in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and 416.945 are only illustrative of the functions potentially relevant to an RFC assessment. Adopting a *per se* rule that these functions must be explicitly addressed on pain of remand (no matter how irrelevant or uncontested in the circumstances of a particular case) would thus not necessarily ensure that all relevant functions are considered. Any such rule in this Circuit, moreover, would put us at odds with sister Circuits who have recognized that an ALJ need not expressly discuss a claimant's capacity to perform each work-related function before classifying the claimant's RFC in exertional terms.

We decline to adopt a *per se* rule. *The relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence. Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed*. Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review. *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir.2001) (remanding where "the ALJ failed to resolve the inconsistencies in the evidence" regarding claimant's residual functional capacity).

*Cichocki*, 729 F.3d at 177–78 (italics added, some citations omitted); *see also, id*. at 173-174 ("[T]he failure explicitly to engage in such a function-by-function analysis does not constitute a *per se* error requiring remand.").

Consequently, in the instant case, Plaintiff's argument that remand is required because the ALJ failed to conduct a function-by-function analysis of all the physical work-

related functions listed in 20 C.F.R. § 416.945(b) lacks merit, since there is no such *per se* rule.

Plaintiff, though, also argues that remand is nevertheless required by *Cichocki*, since the ALJ "fail[ed] to assess [his] capacity to perform relevant functions, despite contradictory evidence in the record," and/or since there are "other inadequacies in the ALJ's analysis [that] frustrate meaningful review." ECF No. 6-1 at p. 8.   As proof of this, Plaintiff suggests that the ALJ failed to address two pieces of evidence:

> [H]ad the ALJ considered [the relevant work-related functions], he would have found greater limitations.   First, for *standing*, evidence demonstrated limitation.   For example, at primary care in October 2020, [Plaintiff] was noted to have ankle pain with difficulty standing. Tr. 966.   Next, *walking* is relevant as well.   In May 2022, at primary care he was noted to have shortness of breath on exertion. Tr. 949.   The ALJ failed to explain these necessary findings to support his RFC.

*Id*. at pp. 9-10 (emphasis added).   The Court understands this argument to be that the ALJ was required to explain how Plaintiff could perform the standing and walking required by the RFC finding, in light of the contrary evidence that Plaintiff cites. *See also*, ECF No. 6-1 at p. 1 ("[T]he decision did not explain discuss [sic] how Plaintiff could stand or walk."). Or, at least, that the ALJ was required to expressly explain why the evidence Plaintiff cites, at Tr. 949 and 966, did not require greater limitations in the RFC finding.

However, the Court does not agree that the ALJ erred in this regard.   As a preliminary matter, insofar as Plaintiff suggests that there are "other inadequacies in the ALJ's analysis that frustrate meaningful review," the argument is too vague to warrant discussion.   That is, Plaintiff does not identify any such "inadequacies" or otherwise

develop the argument.    And, in any event, the Court finds that the ALJ's detailed RFC analysis affords an adequate basis for meaningful judicial review.

This leaves only Plaintiff's argument that remand is required, since the ALJ failed to properly assess Plaintiff's abilities to stand and walk, "despite contradictory evidence in the record," consisting of a notation that Plaintiff had "ankle pain with difficulty standing after sitting," at Tr. 966/Ex. 29F/28, and a notation that Plaintifff had "shortness of breath on exertion," at Tr. 949/Ex. 29F/11.    However, this argument does not withstand scrutiny.

In particular, the notation concerning ankle pain was from an office visit on October 12, 2020, during which Plaintiff complained of left ankle pain after "twisting the ankle" seven days earlier. Tr. 966.    The examining doctor recommended ice and pain medication, and opined that the injury needed time to heal. Tr. 967 ("He was told it takes some time for a twisted ankle to heal.").    The ALJ's decision discusses how, a few months later, in March 2021, Plaintiff returned to the doctor complaining of left ankle pain (though without any significant limp observed), which was diagnosed as "tibial tendinitis," and how Plaintiff then attended seven sessions of physical therapy before being discharged upon having reached maximum improvement. Tr. 27.    The ALJ's decision further notes that upon completion of physical therapy, "the claimant reported no ankle pain and [that]] walking long distances has gotten easier." Tr. 27.    Indeed, as Plaintiff admits in his memorandum of law, this short course of physical therapy resulted in a 90% improvement in his ankle symptoms. ECF No. 6-1 at p. 5.[12]    The ALJ's decision further

[12] Plaintiff implies that this improvement was unimportant, since "pain remained rated six of ten." *Id*. at p. 5.    However, in the same record that Plaintiff cites, the physical therapist reported that Plaintiff's ankle pain was decreased. Tr. 886. Moreover, as the ALJ noted in his decision, as of June 2021, Plaintiff "had

notes that in June 2021, Plaintiff "had no complaints and he demonstrated normal gait," and that in May 2022, Plaintiff "demonstrated 'smooth and steady' gait." Tr. 27. Additionally, the ALJ's decision notes that Dr. Dave did not put any restrictions on Plaintiff's ability to walk or stand, and that the agency review physicians opined that Plaintiff could stand and/or walk for six hours in an eight-hour workday. Tr. 28. Consequently, Plaintiff's suggestion that the ALJ failed to consider his ankle pain or its effect on his ability to stand, when formulating the RFC is simply incorrect.    Nor does the Court find any merit to Plaintiff's suggestion that the notation at Tr. 966, concerning his twisted ankle, required either further discussion by the ALJ or a more-restrictive RFC finding.

The Court similarly finds no merit to Plaintiff's assertion that the ALJ, when making his RFC finding concerning Plaintiff' ability to walk, ignored a reference to Plaintiff having shortness of breath with exertion.    As a preliminary matter, this argument ignores the fact that the ALJ expressly limited Plaintiff to light work in part because an "exercise test performed in September 2020 [indicated that] the claimant could not complete the test due to fatigue and shortness of breath." Tr. 28; *see also, id.* ("[T]he claimant's cardiovascular history clearly would impose more than minimal limitations on the claimant's exertional capacity.").

Nevertheless, Plaintiff indicates that the ALJ failed to consider a notation at page 949 of the record, in which Plaintiff reported shortness of breath. Tr. 949 ("[P]resents for

_____

no complaints and he demonstrated normal gait with no observed clinical musculoskeletal or neurologic abnormality." Tr. 27.

shortness of breath.    Symptoms include dyspnea and exercise intolerance.").    Plaintiff implies that this shortness of breath was related to his cardiac condition, and that it is evidence that he could not perform the walking required at the light exertional level. ECF No. 6-1 at pp. 9-10.

However, that same medical notation, from a telehealth visit with his primary care provider at the "Neighborhood Health Center" on May 10, 2022, indicates that Plaintiff, who was complaining of worsening cough and moderate shortness of breath upon exertion, suspected that he might have Covid-19. Tr. 949.    The notation further indicated that Plaintiff had tested positive for Covid-19 five months earlier. Tr. 949.    The physician's assistant prescribed antihistamines and corticosteroids.    Additionally, due to Plaintiff's cardiac history, the treating nurse practitioner also ordered an echocardiogram, "to check if any changes to the heart." Tr. 951.    However, the insurer denied that request, since an echocardiogram had just been performed in January 2022. Tr. 951.    Notes from a subsequent visit to the same office on May 24, 2022, indicate that Plaintiff's "congestion [was] much better," though the nurse practitioner still wanted to see if Plaintiff's treating cardiologist would order a new echocardiogram. Tr. 948 ("5/24/2022- echo denied. Told pt to call and see if cardio would order").    Plaintiff's final visit to this provider was on August 9, 2022, at which time he was complaining of nausea, vomiting, and abdominal pain, and was diagnosed with "infectious gastroenteritis." Tr. 1231.    Notably, though, Plaintiff was *not* complaining of shortness of breath or cardiac symptoms. Tr. 1232 ("Review of Systems: Respiratory Not Present- Difficulty breathing and Shortness of Breath.    Cardiovascular Not present- Chest pain and Palpitations.").    Consequently, it

20

appears that Plaintiff's shortness of breath had resolved since his last office visit.

As further proof of this, when Plaintiff next saw his treating cardiologist, Dr. Orie, in October 2022, he did not complain of any shortness of breath.  Indeed, Orie specifically noted that Plaintiff denied "a history of chest pain, palpitations, dizziness, claudication, or *dysnpea*." Tr. 1135 (emphasis added).  And, at the hearing, Plaintiff testified that he had no problem walking at a normal pace. Tr. 54.

Consequently, Plaintiff's suggestion that this particular incident of shortness of breath was related to his heart condition is unsupported.  Nor does the evidence arguably support any greater limitations in the RFC finding regarding Plaintiff's ability to walk.

Moreover, and contrary to what Plaintiff contends, the ALJ's RFC discussion did not ignore this evidence.   Rather, the ALJ's RFC discussion refers to it, and, in particular, to the fact that insofar as Plaintiff complained of non-exercise-induced shortness of breath, it appeared to be related to an acute infection, rather than to his heart condition. *See*, Tr. 29 ("While the claimant has had some instances of shortness of breath during the period at issue, these have been attributed to acute illness, rather than his cardiovascular impairments.").

In sum, even assuming *arguendo* that the ALJ did not perform a function-by-function analysis of all the physical work-related functions listed in 20 C.F.R. § 416.945(b) before making his RFC finding, remand is not required since he otherwise applied the correct legal standards, and his decision is supported by substantial evidence and affords an adequate basis for meaningful judicial review such that additional analysis would be

unnecessary or superfluous.

CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 6) for judgment on the pleadings is denied, Defendant's cross-motion (ECF No. 12) for the same relief is granted, and this action is dismissed. The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
     August 27, 2025

ENTER:

_Charles J. Siragusa_
CHARLES J. SIRAGUSA
United States District Judge